# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| NEUROGRAFIX; NEUROGRAPHY INSTITUTE MEDICAL ASSOCIATES, INC.; and IMAGE-BASED SURGICENTER CORPORATION, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | Civil Action No. 12-11275-RGS |
| THE BRIGHAM AND WOMEN'S HOSPITAL, INC.; BRIGHAM AND WOMEN'S PHYSICIANS ORGANIZATION, INC.; PARTNERS HEALTHCARE SYSTEM, INC.; and PRESIDENT AND FELLOWS OF HARVARD COLLEGE, | ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO STAY THIS CASE PENDING RESOLUTION OF RELATED MANUFACTURER CASES

Philip C. Swain (BBO No. 544632)
David E. Cole (BBO. No. 658705)
FOLEY HOAG LLP
Seaport West
155 Seaport Boulevard
Boston, MA 02210-2600
Tel.: (617) 832-1000
Fax: (617) 832-7000
pswain@foleyhoag.com

*Attorneys for the Defendants*

## TABLE OF CONTENTS

BACKGROUND ................................................................................................... 2

    A.    **The '360 Patent** ....................................................................................2

    B.    **The Plaintiffs** ......................................................................................3

    C.    **The Defendants**...................................................................................4

    D.    **The '360 Patent Lawsuits** ..................................................................6

        i.    NeuroGrafix and Washington Research Foundation Sue Oak Tree Medical Corp. and Obtain a Monetary Settlement. ...................................6

        ii.    The Plaintiffs and Washington Research Foundation Sue Siemens and Agree to Give Siemens a License for Siemens and Its Customers. .............6

        iii.    The Plaintiffs and Washington Research Foundation Sue the Regents of University of California over GE and Philips MRI Products, and GE Intervenes.......................................................................................6

        iv.    GE Files a Declaratory Judgment Lawsuit against the Plaintiffs and Washington Research Foundation. ..............................................................7

        v.    The Plaintiffs Sue Philips and BrainLab.....................................................8

        vi.    The Plaintiffs Launch Customer Lawsuits..................................................8

    E.    **The Patent Office Grants *Ex Parte* Reexamination of the '360 Patent.**............9

ARGUMENT........................................................................................................ 9

    A.    **The Customer Suit Doctrine Weighs in Favor of a Stay.** .................................10

    B.    **The Three Factors Considered for a Stay Indicate a Stay is Appropriate.**.....11

        i.    The Very Early Stage of this Case Weighs in Favor of a Stay. .................11

        ii.    A Stay Would Simplify the Issues and Streamline the Trial. ....................12

        iii.    The Plaintiffs Would Not Suffer any Undue Prejudice or Tactical Disadvantage if the Court Were to Stay this Case.....................................15

CONCLUSION ................................................................................................... 18

# TABLE OF AUTHORITIES

*AT&T Intellectual Prop. I, LP v. Tivo, Inc.*,
    774 F. Supp. 2d 1049 (N.D. Cal. 2011) ................................................................. 11

*Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found.*,
    402 U.S. 313 (1971).................................................................................................. 12

*Codex Corp. v. Milgo Elec. Corp.*,
    553 F.2d 735 (1st Cir. 1977)................................................................................... 10

*In re Cygnus Telecomms. Tech. LLC Patent Litig.*,
    385 F. Supp. 2d 1022 (N.D. Cal. 2005) .................................................................. 9

*In re Cygnus Telecomms. Tech. LLC, Patent Litig.*,
    536 F.3d 1343 (Fed. Cir. 2008) ............................................................................. 12

*Delphi Corp. v. Auto. Techs. Int'l, Inc.*,
    2008 WL 2941116 (E.D. Mich. July 25, 2008) ..................................................... 16

*Enhanced Sec. Research, LLC v. Cisco Sys., Inc.*,
    2010 WL 2573925 (D. Del. June 25, 2010)............................................................. 9

*Glenayre Elecs., Inc. v. Jackson*,
    443 F.3d 851 (Fed. Cir. 2006) ............................................................................... 13

*Gould v. Control Laser Corp.*,
    705 F.2d 1340 (Fed. Cir. 1983) ............................................................................. 14

*Honeywell Int'l Inc. v. Audiovox Commc'ns Corp.*,
    2005 WL 2465898 (D. Del. May 18, 2005)........................................................... 12

*Insituform Techs., Inc. v. Liqui-Force Servs. (USA), Inc.*,
    2009 WL 1469660 (E.D. Mich. May 26, 2009) .................................................... 17

*Kalman v. Berlyn Corp.*,
    614 F. Supp. 1327 (D. Mass. 1985) ...................................................................... 10

*Katz v. Lear Siegler, Inc.*,
    909 F.2d 1459 (Fed. Cir. 1990) ................................................................... 9, 10, 11

*Kessler v. Eldred*,
    206 U.S. 285 (1907)................................................................................................ 12

*Landis v. N. Am. Co.*,
    299 U.S. 248 (1936)............................................................................................. 9, 13

*MGA, Inc. v. Gen. Motors Corp.*,
   827 F.2d 729 (Fed. Cir. 1987) ............................................................................... 12

*Nanometrics, Inc. v. Nova Measuring Instruments, Ltd.*,
   2007 WL 627920 (N.D. Cal. Feb. 26, 2007) ......................................................... 15

*Oakley, Inc. v. Seaver Co.*,
   2012 WL 579699 (S.D. Cal. Feb. 22, 2012) ........................................................... 13

*Pegasus Dev. Corp. v. DirecTV, Inc.*,
   2003 WL 21105073 (D. Del. 2003) ....................................................................... 13

*Pragmatus Telecom, LLC v. Advanced Store Co.*,
   2012 WL 2803695 (D. Del. July 10, 2012) ........................................................... 10

*Spread Spectrum Screening LLC v. Eastman Kodak Co.*,
   657 F.3d 1349 (Fed. Cir. 2011) ........................................................................ 9, 13

*Target Therapeutics, Inc., v. SciMed Life Sys., Inc.*,
   1995 WL 20470 (N.D. Cal. Jan. 13, 1995) ........................................................... 12

*Therasense, Inc. v. Becton, Dickinson & Co.*,
   649 F.3d 1276 (Fed. Cir. 2011) ............................................................................. 15

*T.J. Smith & Nephew Ltd. v. Ferris Corp.*,
   1987 WL 7496 (N.D. Ill. Feb.27, 1987) .......................................................... 10, 16

*Ultra Prods., Inc. v. Best Buy Co.*,
   2009 WL 2843888 (D.N.J. Sept. 1, 2009) ............................................................. 13

*Wolf Designs, Inc. v. Donald McEvoy Ltd.*,
   341 F. Supp. 2d 639 (N.D. Tex. 2004) .................................................................. 13

This is a patent infringement case in which the sole count of the plaintiffs' Amended Compliant claims that the defendants infringe claims of U.S. Patent No. 5,560,360 ("the '360 patent"), which, according to the patent, a system "for generating diagnostically useful images of neural tissue (i.e., neurograms) employing a modified magnetic resonance imaging system." Taking the plaintiffs' allegations as true, the defendants own or operate at most the following magnetic resonance imaging ("MRI") machines and computer workstations:

- Fifteen MRI machines manufactured by General Electric Co. ("GE").
- Twenty MRI machines manufactured by Siemens Medical Solutions USA, Inc. ("Siemens").
- Two workstations manufactured by BrainLab, Inc. ("BrainLab").
- Two MRI machines manufactured by Agilent Technologies, Inc., ("Agilent") which do not perform diffusion tensor imaging ("DTI"), the accused infringing method at issue in this case.
- One MRI machine manufactured by EchoMRI, which does not perform the accused infringing method at issue in this case.

This case concerns claims against the customers and users of the above MRI equipment. However, there are already infringement and declaratory judgment actions pending between GE and the plaintiffs in California, specifically *NeuroGrafix et al. v. Regents of the University of California*, C.A. No. 11-07591-MRP-RZ (C.D. Cal.) (the "*Regents* case") and *General Electric Co. v. NeuroGrafix et al.*, C.A. No. 12-04586-MRP-RZ (C.D. Cal.) (the "*GE* case"). A similar action against BrainLab is pending in the Northern District of Illinois, *NeuroGrafix et al. v. BrainLab, Inc. et al.*, *C.A.* No. 12-06075 (N.D. Ill.) (the "*BrainLab* case"). The Siemens machines are not at issue because, as explained in Section D(ii) hereof, Siemens and its customers have a license. The Agilent and EchoMRI machines, which do not perform DTI, are, presumably, not at issue. The scope of this case is therefore limited to: <u>fifteen</u> GE MRI machines and <u>two</u> BrainLab workstations.

Resolution of the *GE, Regents*, and *BrainLab* cases should conclusively resolve most, and potentially all, issues in this case (i) through judgments of invalidity, non-infringement, and, potentially, unenforceability; (ii) in the event that the plaintiffs prevail against GE or BrainLab and are awarded damages, through exhaustion of the plaintiffs' patent rights, barring further or "double" recovery from the defendants in this case; or (iii) through a global settlement with GE or BrainLab with licenses for customers, which type of settlement the plaintiffs have already entered into with another manufacturer, specifically, Siemens.

Accordingly, this customer case should be stayed under the customer suit doctrine and because the three factors considered in issuing a stay also weigh in favor of doing so, i.e., this case is in its infancy; the manufacturer cases would likely simplify issues for trial and might actually render this case moot; and the plaintiffs would not suffer any undue prejudice or clear tactical disadvantage if a stay were issued.

In the event that, after the manufacturer cases are resolved, any issues still remain regarding the use of non-manufacturer software (such as Slicer and 3D Slicer) by a small subset of the equipment at issue, they will be substantially simplified.  There is no reason for the parties or this Court to devote significant resources to the litigation of the alleged infringement by individual customers, when cases against the real parties in interest, the manufacturers, are pending and will likely resolve all or most of the issues before the Court.

The defendants note that they have moved to dismiss the Amended Complaint (Dkt. #26). If the Court were to stay these proceedings, it would not need to address that motion at this time.

## BACKGROUND

### A.   The '360 Patent

On October 1, 1996, the Patent Office issued the '360 patent to Drs. Aaron Filler, Jay Tsuruda, Todd Richards, and Franklyn Howe, the named inventors.  Decl. A, at 1 (the '360

patent).[1]  The patent term will expire on October 1, 2013.

The patent is allegedly aimed at technology that can "image structures such as peripheral nerves and also anisotropic structures within a patient (such as neural tract tissue in the brain)," and is "useful to guide medical practitioners during sensitive intraoperative procedures, such as the removal of brain tumors in portions of the brain that control speech, movement, and vision." Decl. B ¶¶ 16, 20.  Each of the claims of the '360 patent appears to require both a hardware and software component, e.g., MRI machines to perform scans of a patient and software to manipulate data from the scans.  The manufacturers of MRI systems, e.g., GE, Siemens, and BrainLab — none of which is a defendant here — were accused of incorporating this technology in their equipment.  *See* Decl. C.

### B.    The Plaintiffs

The plaintiffs have alleged that Washington Research Foundation ("WRF") holds substantially all rights in the '360 patent, and that WRF exclusively licensed substantially all rights in the patent to Plaintiff NeuroGrafix.  Am. Compl. ¶ 14.  The plaintiffs have further alleged that, as a result of a series of licensing agreements, Plaintiffs NeuroGrafix, NeuroGraphy Institute Medical Associates, Inc. ("NIMA"), and Image-Based Surgicenter Corporation ("IBSC") each have an exclusive license to the '360 patent for certain fields of use.  *Id.* ¶ 15.

Dr. Filler, who is one of the named inventors, is the Chief Executive Officer of both NeuroGrafix and IBSC, and is the Chief of Clinical Services for NIMA.  *See* Decl. D-F.

---

[1] Citations to "Decl. __" and "Appx. __" refer to the exhibits to the Declaration of David E. Cole and the Appendix of Affidavits, respectively, which have been filed herewith.

C.      **The Defendants**

The defendants are a hospital, university, physicians group, and corporation, which allegedly owns, operates, or directs activities at a number of hospitals.  *See*  Am. Compl. ¶¶ 5-8. The defendants are accused of willfully infringing the '360 patent due to their alleged manufacture, use, sale, offers to sell, or importation of infringing products and services.  *See id.* ¶ 19-22.

Defendant Brigham and Women's Hospital, Inc. ("BWH") owns or operates fifteen MRI machines.  Appx. 1 ¶3 (Hooten Aff.).    Nine of those machines were manufactured by Siemens and six were manufactured by GE.  *Id.*  BWH also owns and/or uses a BrainLab workstation.  *Id.* The GE MRI machines and BrainLab workstation use Slicer, 3D Slicer, and BrainLab software. *Id.* ¶ 4.

Defendant  Brigham and Women's Physicians Organization owns one MRI machine, which was manufactured by GE.  Appx. 2 ¶ 3 (Hooten Aff.).    Its employees also use the Siemens and GE MRI machines owned by BWH.  *Id.* ¶ 4.

Defendant Partners HealthCare System, Inc. ("Partners"), does not own or use any MRI equipment.  *See* Appx. 3 ¶ 3 (Schlicke Aff.).  The plaintiffs have alleged that Partners owns  or directs activities at several hospitals, including BWH, Massachusetts General Hospital ("MGH"), Faulkner Hospital ("Faulkner"), Martha's Vineyard Hospital ("Martha's Vineyard"), McLean Hospital ("McLean"), Newton Wellesley Hospital ("Newton Wellesley"), and North Shore Medical Center ("North Shore"), as well owns Partners Community Healthcare, Inc. ("PCHI"), which allegedly sells infringing services and products.  Am. Compl. ¶ 7.  The plaintiffs apparently misapprehend the nature of Partners' relationships with many of these entities.  But even if the Court were to consider these entities, excepting the Agilent and EchoMRI machines which do not perform the accused methods, these entities own or use only GE, Siemens, and

BrainLab equipment.  MGH owns six MRI machines manufactured by Siemens, four MRI machines manufactured by GE and one BrainLab workstation.  Appx. 4 ¶ 2 (Lee Aff.).  Faulkner leases one MRI machine manufactured by Siemens. Appx. 5 ¶ 2 (McIntosh Aff).   Martha's Vineyard owns one MRI machine manufactured by GE.  Appx. 6 ¶ 2 (Ferriter Aff.).  McLean owns one MRI machine manufactured by GE, one MRI machine manufactured by Siemens, and two MRI machines manufactured by Agilent.  Appx. 7 ¶ 2 (Rohan Aff.).  The Agilent machines are not used to calculate diffusion-related properties of tissue.  *Id.* ¶ 3.  Newton Wellesley owns one MRI machine manufactured by GE and one MRI machine manufactured by Siemens.  Appx. 8 ¶ 2 (Silverstone Aff.).  North Shore owns two MRI machines manufactured by GE and one MRI machine manufactured by Siemens.  Appx. 9 ¶ 2 (Houghton Aff.).  PCHI does not own or use any MRI machines or related software.  Appx. 10 ¶ 3 (Connolly Aff.).

Defendants President and Fellows of Harvard College own or lease two MRI machines, one manufactured by Siemens and the other by EchoMRI.  Appx. 11 ¶ 3 (Buckley Aff.).  The EchoMRI machine is not used for DTI, *id.*, and is therefore not at issue here.

Accordingly, between the defendants, the only non-Siemens (i.e., non-licensed) MRI machines and workstations that might be used to perform DTI, and might be at issue in this litigation, are <u>fifteen</u> GE machines and <u>one</u> BrainLab workstation.  Several of the MRI machines or workstations use BrainLab software or third party software such as Slicer and 3D Slicer, which might also be at issue in this case.  As described below, the pending *GE, Regents*, and *BrainLab* cases will address most of the issues regarding infringement and invalidity in this case, and may render this case moot.

D.     **The '360 Patent Lawsuits**

Over the past five years, NeuroGrafix has sought to monetize the '360 patent patent through

various lawsuits against and related settlements with various MRI manufacturers and other

entities.

    i.     NeuroGrafix and Washington Research Foundation Sue Oak Tree Medical
        Corp. and Obtain a Monetary Settlement.

On May 5, 2008, NeuroGrafix and WRF sued Oak Tree Medical Corporation and others,

including one of the named inventors, Dr. Tsuruda, for infringement of the '360 patent.  *See*

Decl. G.  The Oak Tree defendants brought a third-party complaint against the manufacturer

(Philips) of the accused equipment, seeking a defense and indemnification.  *See* Decl. H.  A

stipulated dismissal was entered on June 30, 2009, after the parties agreed to a settlement in

which NeuroGrafix and WRF were paid $900,000.  *See* Decl. I; Decl. J; Decl. K, at p. 2.

    ii.     The Plaintiffs and Washington Research Foundation Sue Siemens and
        Agree to Give Siemens a License for Siemens and Its Customers.

On March 18, 2010, NeuroGrafix, NIMA, and IBSC, along with WRF and two other

entities, sued MRI manufacturer Siemens.  *See* Decl. B.  After extensive motion practice and

claim construction briefing, Judge Mariana R. Pfaelzer issued a *Markman* order.  Shortly after

the parties briefed and the court heard argument on Siemens' motion for partial summary

judgment on invalidity, on November 22, 2011, the parties filed a joint stipulation of dismissal

pursuant to a settlement agreement, which gave Siemens and its customers a license to the '360

patent.  *See* Decl. L, entries 114, 119-169; Decl. M; Decl. N.

    iii.     The Plaintiffs and Washington Research Foundation Sue the Regents of
        University of California over GE and Philips MRI Products, and GE
        Intervenes.

On September 14, 2011, NeuroGrafix, NIMA, IBSC, and WRF sued the Regents of the

University of California ("UC").  *See* Decl. O, Complaint in *NeuroGrafix v. Regents of the Univ.*

*of Cal.* (the "*Regents* case").  On January 18, 2012, UC filed its answer and asserted a

counterclaim, seeking declaratory judgments of non-infringement and invalidity as to all claims

of the '360 patent.  *See* Decl. P, at 8-10, ¶¶ 10-21.

In that case, which is also before Judge Pfaelzer, the court allowed manufacturer GE to

intervene because the  infringement allegations were based, in part, on UC's use of GE's

machines.  *See* Decl. Q, at 1-4; Decl. R.  The court, however, limited GE's intervenor status to

the claims against UC.

Judge Pfaelzer has since issued a *Markman* order — construing the claims of the '360

patent for a second time — and UC and GE have jointly moved for summary judgment on non-

infringement of the GE and Philips MRI machines used by UC, and invalidity of claims 36 and

51 and all of their dependent claims.  Decl. S, entries 90, 109-122; Decl. T.  That motion is

pending.

> iv.    GE Files a Declaratory Judgment Lawsuit against the Plaintiffs and
>        Washington Research Foundation.

Due to the court's limitation of GE's intervenor in the *Regents* case, GE sued

NeuroGrafix, NIMA, IBSC, and WRF, seeking declarations of invalidity and non-infringement

of all claims of the '360 patent.  *See* Decl. U.  This case is also before Judge Pfaelzer.

The plaintiffs purported to grant a covenant not to sue for some of the claims to GE (but

not its customers), and, on July 23, 2012, moved to dismiss for lack of standing with respect to

those claims.  The court denied this motion.  Decl. V.  The plaintiffs later moved for

reconsideration and for certification for interlocutory review.  The court denied both motions.

Decl. W-X.

Between the *Siemens*, *Regents*, and *GE* cases, Judge Pfaelzer has now had the same

technology, patent, and plaintiffs before her for over two years; has construed the claim terms

twice; has heard summary judgment arguments on invalidity once; and has a motion for summary judgment on invalidity and non-infringement of the GE and Philips products pending before her.

        v.      <u>The Plaintiffs Sue Philips and BrainLab.</u>

In June and August 2012, the plaintiffs sued MRI manufacturers Philips and BrainLab, respectively, alleging that they have infringed the '360 patent.  *See* Decl. Y; Decl. Z.  In the *Philips* case, which is pending before this Court, the *Philips* defendants have answered the complaint and asserted a counterclaim seeking declaratory judgments of invalidity and non-infringement.  Decl. AA, at 10-11, ¶¶ 51-58.  In the *BrainLab* case, the *BrainLab* defendants' responses to the complaint are due by November 16, 2012.

        vi.     <u>The Plaintiffs Launch Customer Lawsuits.</u>

During the summer of 2012, the plaintiffs filed an additional wave of infringement lawsuits against alleged MRI customers:  one in the Northern District of Illinois; one in the District of Maryland; four, including this case, in this District; and one against the United States in the Court of Federal Claims.  *See* Decl. BB-GG.  Only two of the defendants in one of the Massachusetts customer cases have answered the complaint.[2]

With respect to the present case, the plaintiffs have alleged that the defendants are infringing "at least claim 36 of the '360 Patent."  Am. Compl. ¶ 19.  Although the plaintiffs' complaint does not specifically identify the accused products, to the extent that any of the defendants own or use non-Siemens MRI equipment for DTI, the manufacturer is GE or BrainLab.

---

[2] On September 10, 2012, the defendants in the District of Maryland moved to dismiss the complaint.  *See* Decl. HH (Motion).  In response, the plaintiffs moved to amend the complaint, which the court has not acted on.  Also, the defendants in three of the Massachusetts customer cases have moved to dismiss the amended complaints.

E.     **The Patent Office Grants *Ex Parte* Reexamination of the '360 Patent.**

Additionally, on July 10, 2012, a third-party request was filed with the Patent Office,

seeking the *ex parte* reexamination of claims 1, 3-6, 12, 13, 18-20, 23-25, 28, 34, and 35 of the

patent.  A corrected request was filed on August 10, 2012 to address various technical filing

deficiencies.  On September 11, 2012, the Patent Office granted the request, finding that the cited

prior art raised substantial new questions of patentability.  *See* Decl. II.  That reexamination is

now pending.

## ARGUMENT

The Court may exercise its inherent power to stay this case in the interests of "economy

of time and effort for itself, for counsel, and for litigants."  *See Landis v. N. Am. Co.*, 299 U.S.

248, 254 (1936).  Under the "customer suit doctrine," the court should stay a patent case against

a customer of the allegedly infringing product when a parallel case is pending against the

manufacturer.  *See Spread Spectrum Screening LLC v. Eastman Kodak Co.*, 657 F.3d 1349, 1358

(Fed. Cir. 2011); *Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1464 (Fed. Cir. 1990).  Here, the

customer suit doctrine weighs in favor of staying this case in favor of the manufacturer suits.

Additionally, the factors typically considered by a court in determining whether to grant a

motion to stay also favor a stay:  (1) whether discovery is completed and whether a trial date has

been set; (2) whether a stay will simplify the issues; and (3) whether the requested stay would

unduly prejudice or present a clear tactical disadvantage to the non-moving party.  *See, e.g.*,

*Enhanced Sec. Research, LLC v. Cisco Sys., Inc.*, 2010 WL 2573925, at *3 (D. Del. June 25,

2010); *In re Cygnus Telecomms. Tech., LLC Patent Litig.*, 385 F. Supp. 2d 1022, 1023 (N.D.

Cal. 2005).

A.    **The Customer Suit Doctrine Weighs in Favor of a Stay.**

The present case is a customer case, and there are manufacturer cases now pending, concerning the same products, patent, and plaintiffs:  the *Regents, GE*, and *BrainLab* cases. Accordingly, staying this case would be consistent with the customer suit doctrine, which would apply to the *Regents, GE*, and *BrainLab* cases since the manufacturers in at least two of those cases have sought declaratory judgments of non-infringement and invalidity with respect to all claims.  Presumably, BrainLab will do the same in the *BrainLab* case.  But even if the customer suit doctrine were not strictly applicable, the reasoning and policy considerations underlying that doctrine would weigh heavily in favor of a stay here.  *See Pragmatus Telecom, LLC v. Advanced Store Co.*, 2012 WL 2803695, at *3 (D. Del. July 10, 2012); *Kalman v. Berlyn Corp.*, 614 F. Supp. 1327, 1331 (D. Mass. 1985).

Under the customer suit doctrine, courts have stayed customer infringement suits to allow manufacturer suits to move forward because manufacturers were the "true defendant."  *See Katz*, 909 F.2d at 1464 (enjoining customer suit in favor of pending manufacturer suit, noting "it is a simple fact of life that a manufacturer must protect its customers, either as a matter of contract, or good business, or in order to avoid the damaging impact of an adverse ruling against its products"); *Codex Corp. v. Milgo Elec. Corp.*, 553 F.2d 735, 737-38 (1st Cir. 1977) (reversing denial of injunction of customer suit to allow manufacturer suit to proceed, explaining the manufacturer is the "true defendant" in the customer suit); *T.J. Smith & Nephew Ltd. v. Ferris Corp.*, 1987 WL 7496, at *1-2 (N.D. Ill. Feb. 27, 1987) ("[T]he manufacturer is clearly in the best position to either defend against a claim of infringement or to affirmatively assert invalidity of the holder's patent.").

In *Katz*, for example, the plaintiff sued the manufacturer in the District of Massachusetts, and also sued several of the manufacturer's customers in the Western District of New York.  *See*

10

909 F.2d at 1461.  The court went so far as to enjoin the plaintiff from prosecuting the suit

against the customers in New York, and the Federal Circuit affirmed.  *See id.* at 1461, 1464.  In

doing so, the Federal Circuit held that, under the customer suit doctrine, "litigation against or

brought by the manufacturer of infringing goods takes precedence over a suit by the patent

owner against customers of the manufacturer."  *Id.* at 1464.  Justifying its decision, the Federal

Circuit stated that "the manufacturer is the true defendant in the customer suit," and, "[a]lthough

there may be additional issues involving the defendants in the [New York] action, their

prosecution will be advanced if [plaintiff] is successful on the major premises being litigated in

Massachusetts, and may well be mooted if he is unsuccessful."  *Id.*  Here, as in *Katz*, the

manufacturers are the true defendants, and delaying the prosecution of actions against its

customers is sensible and appropriate.

## B.      The Three Factors Considered for a Stay Indicate a Stay is Appropriate.

Additionally, the three factors considered in determining whether to grant a motion for

stay in favor of other proceedings all weigh in favor of granting a stay here:  (1) discovery has

not yet started and no trial date has been set; (2) a stay would simplify the issues in this case; and

(3) a stay would not unduly prejudice or present a clear tactical disadvantage to the plaintiffs.

### i.      The Very Early Stage of this Case Weighs in Favor of a Stay.

The fact that discovery has not yet started and that this case is in its infancy weighs in

favor of a stay.  The plaintiffs served the defendants with the complaint in July, 2012; the

defendants have not yet answered the complaint; no Rule 16 case management conference has

occurred; no schedule or trial date has been set; no initial disclosures have been exchanged; and

no discovery has been conducted.  Accordingly, neither the parties nor the Court has yet devoted

substantial time and resources to this case.  *See, e.g., AT&T Intellectual Prop. I, LP v. Tivo, Inc.*,

774 F. Supp. 2d 1049, 1052 (N.D. Cal. 2011) (granting stay where parties had not shared expert

reports, taken depositions, or filed any dispositive motions, but had filed claim construction briefs); *Honeywell Int'l Inc. v. Audiovox Commc'ns Corp.*, 2005 WL 2465898, at \*4 (D. Del. May 18, 2005) (granting a stay where it "comes at [a] time when discovery has not even begun and no trial date has been set"); *Target Therapeutics, Inc., v. SciMed Life Sys., Inc.*, 1995 WL 20470, at \*2 (N.D. Cal. Jan. 13, 1995) (granting motion to stay where case was in its "incipient stages," and noting that parties had not yet engaged in "expensive discovery").

    ii.  <u>A Stay Would Simplify the Issues and Streamline the Trial.</u>

      a.  *The manufacturer cases would simplify the issues and may render this case moot.*

    Staying this case pending the resolution of the manufacturer cases would, at the very least, simplify issues in this case, and may actually moot this entire litigation. Indeed, if the manufacturers prove the claims of the '360 patent are invalid or unenforceable, then the plaintiffs would be collaterally estopped from pursuing their claims against the defendants. *See Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 347 (1971); *In re Cygnus Telecomms. Tech., LLC, Patent Litig.*, 536 F.3d 1343, 1349 (Fed. Cir. 2008).

    If GE or BrainLab proves that its products do not infringe, then the plaintiffs would be collaterally estopped here from pursuing claims on those products. *See Kessler v. Eldred*, 206 U.S. 285, 288-89 (1907) (barring infringement action against a customer of a manufacturer that proved in a previous action that its products do not infringe); *MGA, Inc. v. Gen. Motors Corp.*, 827 F.2d 729, 734-35 (Fed. Cir. 1987) ("The *Kessler* doctrine bars a patent infringement action against a customer of a seller who has previously prevailed against the patentee because of invalidity or noninfringement of the patent; otherwise, the effect of the prior judgment would be virtually destroyed.").

Further, in the event that the plaintiffs overcome the invalidity challenges and prove infringement by GE or BrainLab, the plaintiffs would be precluded from seeking damages from the customers here because they would have already been made whole. *See Glenayre Elecs., Inc. v. Jackson*, 443 F.3d 851, 864 (Fed. Cir. 2006) ("[A] party is precluded from suing to collect damages for direct infringement by a buyer and user of a product when actual damages covering that very use have already been collected from the maker and seller of that product."). Thus, the resolution of the manufacturer cases will simplify and likely render the present case moot, thereby further justifying a stay.

If, after the manufacturer cases are completed, the plaintiffs' claims are not fully exhausted with respect to the customers, then the stay can be lifted for the limited resolution of any remaining issues, including addressing the use of non-manufacturer software. Resolution of the manufacturer cases would simplify any such issues by eliminating most, and potentially all, infringement disputes with respect to the accused products by providing the Court and the parties with the benefit of the claim construction rulings of the other participating courts, and by shedding additional light on the plaintiffs' infringement and claim construction positions.

That there may be some issues in this case after the manufacturer cases conclude should not weigh against a stay. *See Spread Spectrum*, 657 F.3d at 1358 ("[T]he manufacturer's case need only have the potential to resolve the 'major issues' concerning the claims against the customer — not every issue — in order to justify a stay of the customer suits."); *Oakley, Inc. v. Seaver Co.*, 2012 WL 579699, at *3 (S.D. Cal. Feb. 22, 2012); *Ultra Prods., Inc. v. Best Buy Co.,* 2009 WL 2843888, *5 (D.N.J. Sept. 1, 2009); *Wolf Designs, Inc. v. Donald McEvoy Ltd.*, 341 F. Supp. 2d 639, 643 (N.D. Tex. 2004); *Pegasus Dev. Corp. v. DirecTV, Inc.*, 2003 WL 21105073, *2 (D. Del. May 14, 2003); *Landis*, 299 U.S. at 254.

In any event, since the same patent is at issue in this case and the manufacturer cases, and the manufacturer cases might render this case moot, there would be unnecessary duplication of work concerning claim construction, infringement, invalidity, and other patent issues if this case were to proceed in a parallel with the manufacturer cases.  For example, in their Amended Complaint, the plaintiffs have asserted claim 36 of the '360 patent against the defendants.  Am. Compl. ¶ 19-21.  This <u>same</u> claim is at issue in <u>all</u> of the manufacturer cases.[3]

        b.      *A stay would also allow the co-pending reexamination  to progress.*

Allowing time for the manufacturer cases to proceed while this case is stayed would have the added benefit of allowing the co-pending *ex parte* reexamination to eliminate or elucidate issues for trial in this case through its generation of additional prosecution history; the patent owner's clarification of the scope of its claims and construction of claim terms; the Patent Office's consideration of various prior art references and the patent owner's positions with respect to those references; the Patent Office's potential rejection of claims; and the patent owner's potential amendment of claims to overcome prior art.  *See Gould v. Control Laser Corp.*, 705 F.2d 1340, 1342 (Fed. Cir. 1983).  This benefit would be realized not only for any claims subject to reexamination, but also for claims not subject to reexamination since the claims share some of the same terms and limitations.[4]

The results of the *ex parte* reexamination might also bear on potential issues of inequitable conduct, which, if found, would render the entire patent unenforceable.  Indeed,

---

[3] *See* Decl. JJ, at 1-3 (NeuroGrafix's Infringement Contentions in *Regents* Case) (asserting claim 36); Decl. U ¶¶ 23-25, 27-29 (*GE* Compl.) (seeking declaratory judgments as to all claims); Decl. Z ¶ 17 (*BrainLab* Compl.) (asserting claim 36); Decl. Y ¶ 21 (*Philips* Compl.) (asserting claim 36, among others); Decl. AA, at 10-11, ¶¶ 51-58 (*Philips* Counterclaim) (seeking declaratory judgments as to all claims).

[4] During the Local Rule 7.1 conference, the plaintiffs represented that the claims subject to reexamination will not be asserted here.

many of the references involved in the reexamination are references that named inventor, Dr.

Tsuruda, admitted were known at least by another named inventor, Dr. Filler, but not disclosed

to the Patent Office.  Dr. Tsuruda further asserted that, for this reason, the '360 patent is

unenforceable due to inequitable conduct.  *Compare* Decl. II, at 3, 6-7 (Reexamination Order)

(citing Middleton and Rapoport references), *with* Decl. LL ¶ 59 (Tsuruda Counterclaim) (Dr.

Filler failed to disclose Middleton and Rapoport references).  This is significant because, in

*Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1291-92 (Fed. Cir. 2011), the

Federal Circuit held:

> [A]s a general matter, the materiality required to established inequitable conduct
> is but-for materiality.  When an applicant fails to disclose prior art to the PTO,
> that prior art is but-for material if the PTO would not have allowed a claim had it
> been aware of the undisclosed prior art.  Hence, in assessing the materiality of a
> withheld reference, the court must determine whether the PTO would have
> allowed the claim if it had been aware of the undisclosed reference.  In making
> this patentability determination, the court should apply the preponderance of the
> evidence standard and give claims their broadest reasonable construction. . . .
> [E]ven if a district court does not invalidate a claim based on a deliberately
> withheld reference, the reference may be material if it would have blocked patent
> issuance under the PTO's different evidentiary standards.  (citation omitted).

Accordingly, under the two-pronged — "materiality" and "intent"— analysis of

inequitable conduct, staying the case would give the Court the benefit, with respect to the

"materiality" prong, of the Patent Office's decision and its application of its own "broadest

reasonable construction" standard.  The Court might not need to determine for itself what, if

anything, the Patent Office would do under the Patent Office's standard.

      iii.    <u>The Plaintiffs Would Not Suffer any Undue Prejudice or Tactical
Disadvantage if the Court Were to Stay this Case.</u>

*First*, as discussed above, this case is in its early stages, so there is no risk that a stay

would sacrifice any substantial work invested in this litigation by the parties or the Court.

Although a stay would necessarily delay this action, "[m]ere delay, without more though, does

not demonstrate undue prejudice" with respect to staying a case. *See Nanometrics, Inc. v. Nova Measuring Instruments, Ltd.*, 2007 WL 627920, at *3 (N.D. Cal. Feb. 26, 2007). Furthermore, there is no apparent reason why the <u>plaintiffs</u> delayed bringing this case for so long that now only about a year of patent term remains. In view of this, any additional delay associated with waiting for the manufacturer cases to conclude should not weigh against a stay.

*Second*, a stay would not deprive the plaintiffs of any significant avenues of discovery. They will have an opportunity in the manufacturer lawsuits to obtain discovery from the most significant sources of information, i.e., the manufacturers. Any information the defendants have would, for the most part, be duplicative of the information the plaintiffs could obtain from the manufacturers. Indeed, the defendants would likely turn to the manufactures for much of the information needed to defend against the plaintiffs' infringement contentions. *See Delphi Corp. v. Auto. Techs. Int'l, Inc.*, 2008 WL 2941116, at *4 (E.D. Mich. July 25, 2008) ("[A] customer that did not have final responsibility for designing, developing or manufacturing a component of its production would have less incentive [than its manufacturer] to vigorously defend it against patent suits . . . ."); *T.J. Smith & Nephew*, 1987 WL 7496, at *1-2 ("Presumably it is the manufacturer who has the more detailed knowledge regarding the claim of infringement, the expertise in the area, and the primary interest in the outcome of the litigation."). But if third-party discovery from the customers is appropriate, the plaintiffs might seek discovery from them in the manufacturer cases, and, indeed, in the *Regents* case, the plaintiffs have already issued at least one third-party subpoena to Brigham and Women's Hospital, Inc., a defendant in this case. *See* Decl. MM.

*Third*, staying this case would not deprive the plaintiffs of any damages. The plaintiffs will be able to pursue their infringement claims with respect to the accused products in the

manufacturer lawsuits.  As discussed above, the manufacturer cases would foreclose recovery from the defendants if the manufacturers prove that the '360 patent is invalid or the GE or BrainLab  products are found not to infringe.  The same would be true if GE or BrainLab is found liable and the plaintiffs are awarded damages; the plaintiffs' rights would be exhausted and they could not then seek damages from the defendants.  But to the extent that the plaintiffs' rights are not exhausted  in the manufacturer cases, they could seek damages from the defendants once the stay is lifted.

*Fourth*, Dr. Filler, who is a named inventor, CEO of NeuroGrafix and IBSC, and NIMA's Chief of Clinical Services, has acknowledged that allowing the manufacturer cases to proceed would be the most efficient use of the plaintiffs' resources, would globally resolve the issues in these cases, and would conserve judicial resources.  Indeed, in Dr. Filler's recent book, he explains the plaintiffs' global litigation strategy with respect to the '360 patent and their preferred avenue of resolving the issues related to the customers via manufacturer suits:

> [With respect to suing customers,] [e]ven with a win, it might turn out that the medical center could not pay more than one-third of the judgment. . . .

> However, if the target of the litigation was a large manufacturer, and the manufacturer could be held liable for inducement of infringement, then the damages would be extremely large.

*See* Decl. NN, at 203-204 (Filler, "The Smart Guide to Patents" (2012)).

*Fifth*, there is no realistic prospect that the plaintiffs will be deprived of any injunctive relief.  Indeed, although the plaintiffs included a boilerplate request for a preliminary injunction in their Amended Complaint, it is clear that they do not want one.  The plaintiffs have not sought an injunction in this case or in any of the other seventeen cases around the country that they filed between 2008 and the present.  This too weighs in favor of a stay.  *See Insituform Techs., Inc. v. Liqui-Force Servs. (USA), Inc.*, 2009 WL 1469660, at *2 (E.D. Mich. May 26, 2009).

The plaintiffs' failure to seek preliminary injunctions in any of the seventeen cases is consistent with their litigation strategy, which is aimed at monetizing the patent rather than obtaining injunctions.  Dr. Filler has articulated this strategy, stating that alleged infringers "should arrange for a license or a lease agreement," and "expects other vendors will line up to pay for past and future use of DTI."  *See* Decl. K, at pp.1-2; *cf.* Decl. OO ¶ 1 (NeuroGrafix "receives an inexorable flow of income from its various sub-licensees" of the '360 patent).  Indeed, the plaintiffs' two earliest cases were settled in exchange for licenses and monetary settlements.  *See* Decl. K at p. 2 ; Decl. N.

Moreover, even if the plaintiffs were to move for a preliminary injunction, it is unlikely that they would be successful anyway.  For example, with respect to the "likelihood of success" prong, as described above, one of the named inventors has personally admitted that the patent is invalid and unenforceable.  Regarding "irreparable harm," any contention that the plaintiffs are suffering any harm that is not strictly monetary, e.g., loss of market share, would be undermined by the fact that they have licensed the patent to Siemens and its customers, have not sought to enjoin any of the manufacturers or their customers, and have delayed bringing suit.  Lastly, although there might be a general public interest in enforcing patents, the "public interest" and "balance of the equities" would appear to weigh against an injunction given its limited value to the plaintiffs since it could last only until expiration of the patent on October 1, 2013, while the potential disruption in patient services might be significant.

## CONCLUSION

Because the issues here will be litigated by the real defendants in the *GE, Regents,* and *BrainLab* cases and because all relevant factors favor a stay, the Court should stay this case pending the resolution of the manufacturer cases.

18

Respectfully submitted,

THE BRIGHAM AND WOMEN'S HOSPITAL,
INC.; BRIGHAM AND WOMEN'S
PHYSICIANS ORGANIZATION, INC.;
PARTNERS HEALTHCARE SYSTEM, INC.;
and PRESIDENT AND FELLOWS OF
HARVARD COLLEGE,

By their attorney,

/s/ Philip C. Swain
Philip C. Swain (BBO No. 544632)
David E. Cole (BBO. No. 658705)
FOLEY HOAG LLP
Seaport West
155 Seaport Boulevard
Boston, MA 02210-2600
Tel: (617) 832-1000
Fax: (617) 832-7000
pswain@foleyhoag.com
Dated:  October 29, 2012               dcole@foleyhoag.com

## Certificate of Service

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and paper copies will be sent to those indicated as unregistered participants on October 29, 2012.

/s/ Philip C. Swain